### UNITED STATES v. BUSHWICK MILLS, Inc., et al.

No. 50, Docket 20716.

Circuit Court of Appeals, Second Circuit.

Dec. 23, 1947.

Ben Herzberg and Samuel Falk, both of New York City (Ben Herzberg, Irving Spieler, and Jerome L. Abrams, all of New York City, of counsel), for appellant Margolin.

Samuel Mezansky, of New York City (Samuel Mezansky and Jack M. Perlman, both of New York City, of counsel), for appellant Bushwick Mills, Inc.

John F. X. McGohey, U. S. Atty., of New York City (Bruno Schachner and Martin Klein, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The appellants, Bushwick Mills, Inc., and Samuel Margolin, were convicted and sentenced upon three indictments which were consolidated for trial. Two of the indictments charged violations of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., by offering for sale, selling and delivering wool knitting yarns at a price in excess of the maximum price provided in Revised Price Schedule No. 58; the third indictment charged a conspiracy to sell above the ceiling price, 18 U.S.C.A. § 88. One Berger was included as a defendant in the conspiracy indictment and in the "short" substantive indictment which contained nine counts. He pleaded guilty and testified for the government. The "long" substantive indictment contained 130 counts, of which 82 were dismissed on motion by the Government at the close of its case. The defendants offered no proof whatever. The jury convicted them on the conspiracy indictment, on all counts of the "short" indictment and on 46 counts of the long indictment; upon two counts of the latter they were acquitted. Margolin was sentenced to imprisonment for a year and a day on the conspiracy indictment and to imprisonment for one year on each of the substantive counts, all sentences to run concurrently. A joint fine of $170,000 was imposed on both appellants, being $3,000 on each of the 55 substantive counts and $5,000 on the conspiracy indictment, and Margolin is to stand committed until the fine is paid.

The question receiving most attention at the trial and underlying the main contentions on appeal relates to venue of the substantive counts, that is, whether any crime was committed within the southern district of New York, where the indictments were found and where the offering for sale, selling and delivering yarn at above the ceiling price were charged to have occurred. The appellants, however, had their place of business in Brooklyn, which is within the eastern district of New York, and most of their acts connected with the substantive offenses were performed there.

In general the business was transacted as follows: Bushwick Mills, Inc., was owned by Margolin, its president. Its offices and its plant for the production of knitted goods were located in Brooklyn, N. Y., and there Margolin did business. When he purchased yarn, it was delivered directly from the mills or the spinners to dyers located either in Brooklyn or in Philadelphia. When the dyers received the yarn they entered it on their records, by identifying bale and case numbers, and held it for the account of Bushwick Mills. When Margolin made a contract to sell yarn he delivered an invoice to the buyer which specified so many pounds of a stated quality and at a designated price. The buyer did not see the yarn but bought by description.[1] Margolin appropriated specific yarn to a contract of sale by directing the dyer to transfer to the buyer bales or cases, which he identified by number, from the Bushwick Mills account. The dyer would then make the directed entries on his books, notify the buyer of the transfer, and thereafter hold the specified yarn for the buyer's account.

The sales charged in the indictments were made to buyers whose places of business were located in the southern district of New York.[2] Usually the buyer either saw Margolin at his Brooklyn office or communicated with him there by telephone from the buyer's New York office. Margolin made the sales under various names— Bushwick Mills, MarKar Company and Cornell Company, trade names which he had registered, and Linden Sportswear, the trade name of a partnership which he formed with Berger. He also issued some invoices under the fictitious names of "Frank Corelli," "Frank Cohen" and "H. Marks." The invoices were sent to the buyer's office, usually by mail but sometimes were delivered personally by Margolin's agent Berger. Generally the price at which the yarn was sold was stated on the invoice, but in some instances the quantity of yarn was padded so that the actual price charged per pound was understated. Many

---

[1] With one exception the invoices did not specify any particular lot of yarn.

[2] For convenience the southern district will be referred to as New York and the eastern district as Brooklyn.

of the checks received in payment from the buyers were cashed either at the banks upon which they were drawn or by a check casher. Berger, who prepared a large number of the invoices on Margolin's instructions, knew that the prices charged were above ceiling. He testified that several times he raised the question with Margolin whether it was safe to charge such prices but Margolin said it was all right so long as an invoice was made out. According to the Government's tabulation, the prices charged aggregated $360,000 in excess of ceiling, but this figure included counts withdrawn from submission to the jury. On the counts submitted the excess amounted to $117,607.11.

■ Section 42 of the Judicial Code, 28 U.S.C.A. § 103, provides that

"When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein."

But the Emergency Price Control Act contains its own provision as to venue, 50 U.S.C.A.App. § 925(c):

"The district courts shall have jurisdiction of criminal proceedings for violations of section 4 of this Act (section 904 of this Appendix) * * *. Such criminal proceedings may be brought in any district in which any part of any act or transaction constituting the violation occurred."

Section 904(a) declares it to be unlawful "for any person to sell or deliver any commodity * * * in violation * * * of any price schedule * * * or to offer, solicit, attempt, or agree to do any of the foregoing." And in section 942(a) the term "sale" is defined to include "sales, dispositions, exchanges, leases, and other transfers, and contracts and offers to do any of the foregoing"; and the terms "sell," "selling," "seller," "buy" and "buyer," are to be "construed accordingly." Thus it is apparent that Congress made unlawful not merely such technical transfers of title as satisfy the local law of sales but also any acts which come within the broad statutory definition;[3] and venue for prosecution was extended to any district in which any part of any act constituting the violation occurred.

When the prosecution rested, defendants' counsel moved to dismiss each of the substantive counts for lack of proof of venue in the southern district. But the trial judge allowed the case to be reopened and further evidence to be introduced by the prosecutor. The question of venue was left to the jury under a charge to which no exceptions were taken by the appellants. Notwithstanding their failure to object to the charge, they now contend that the charge was so erroneous that the jury's verdict cannot be sustained.

■ Objections to venue may be waived by failure to make them in due season. United States v. Jones, 2 Cir., 162 F.2d 72; Mahaffey v. Hudspeth, 10 Cir., 128 F.2d 940, certiorari denied 317 U.S. 666, 63 S.Ct. 76, 87 L.Ed. 535; Hagner v. United States, 60 App.D.C. 335, 54 F.2d 446, affirmed on other grounds 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861. The defendants were content to let the jury pass upon their guilt under the charge as given. Only after they had taken this gamble and lost, did they question the accuracy of the charge. Under these circumstances they should be held to have waived the errors they now assert with respect to instructions as to venue.

■ Moreover, Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, provides

"No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

If we assume, without decision, that despite Rule 30 an appellate court still retains its former power to take note, in its discretion, of an error in the charge to which no objection was made, such discretion will be exercised only where the error

---

[3] See United States v. Lutz, 3 Cir., 142 F.2d 985, 989.

is plain and fundamental. See Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330; United States v. Williams, 2 Cir., 146 F.2d 651, certiorari denied 324 U.S. 876, 65 S.Ct. 1016, 89 L.Ed. 1428. It is by no means clear that the charge was erroneous in any fundamental respect.

■ The jury was told that "The question is, was there an offer of sale, sale or delivery made in the Southern District of New York." In amplifying this basically correct instruction the judge stated that if an offer to sell is accepted, a sale occurs in the district of acceptance; and with respect to telephone communications said that only if the last offer made over the telephone was accepted in the southern district, could the sale be regarded as occurring here and venue be established. Concededly this instruction was unduly favorable to the defendants. An offer to sell made by telephone from Margolin in Brooklyn to an offeree in New York may be prosecuted in either district. Margolin's act of speaking the words into the telephone is projected into New York where the offeree hears them. Hence part of the "act or transaction constituting the violation" occurred in each district and venue may be laid in either. Similarly if the violation was a contract to sell negotiated by telephone, the court in either district has jurisdiction regardless of which party accepts the offer of the other. By the technical law of contracts the contract is made in the district where the acceptance is spoken. Restatement, Conflicts, § 326, Comments c and d; Dudley A. Tyng & Co. v. Converse, 180 Mich. 195, 146 N.W. 629. And under the broad provisions of § 925(c), if the buyer telephoned an offer which the seller accepted, Margolin's words uttered in Brooklyn, but projected into New York, were operative in New York to establish venue there, since though the contract technically was made in Brooklyn, an essential part of the contract occurred in New York where the acceptance was received. As to "delivery" the jury was charged that this "means merely a transfer of title or possession,"

and unless there was a specific agreement otherwise delivery takes place at the seller's place of business. Although it would have been more accurate to confine "delivery" to transfer of possession and to deal with transfer of title under the charge of "selling," the resulting confusion, if any, would seem inconsequential since both selling and delivering were charged in each count of the substantive indictments. Moreover, defendants were not harmed by the instruction as to place of "delivery" in the absence of specific agreement since Margolin's place of business was not in New York.

■ With respect to the passage of title the appellants say that all the sales, with one exception, were sales by description of yarns stored with the dyers, and complain of failure to charge the rule of the Sales Act relating to a contract to sell unascertained goods and the necessity, before title passes, of appropriating specific goods to the contract with the assent of the buyer.[4] They also complain of confusion in the instructions as to the effect of payment—which in substance told the jury that a sale was consummated in the southern district if payment was made there and it was a condition of the contract that title should pass upon payment of the purchase price, and that payment was made in New York if the check or cash was there delivered to Margolin or his agent but not if the check was mailed in New York for delivery in Brooklyn. As already pointed out, the definition of conduct prohibited by section 904(a) of the Emergency Price Control Act goes far beyond the mere passage of title, and under section 925(c) venue may be laid not only where the passage of title takes place but also where the offer to sell, the contract to sell, delivery of possession of the goods, or "any part of any act or transaction constituting the violation occurred." Under such a statute, where the issue is as to venue, we do not think that the court is obliged to charge the technical rules as to passage of title with the same completeness as may be necessary in a private suit involving determination of which party bears the risk of loss at a given mo-

4 See sections 98, 100(4) New York Personal Prop. Law, Consol.Laws, c. 41; Carter, Macy Co. v. Matthews, 220 App. Div. 679, 222 N.Y.S. 472, affirmed 247 N.Y. 532, 161 N.E. 171; United States v. Chevallier, 9 Cir., 107 F. 434.

ment. When a contract to sell above the ceiling price is made in one district and payment is collected by the seller in another, we cannot doubt that Congress intended the seller to be subject to prosecution in either. See United States v. Sherman Auto Corp., 2 Cir., 162 F.2d 564, 566; cf. United States v. Levy, 3 Cir., 153 F.2d 995, 996. Indeed, it may well be that even the buyer's act of mailing a payment check may be ascribed to the seller as the procuring cause, and thus subject him to prosecution in the district where the check was mailed. If so, the instructions as to payment were unduly favorable to the accused, but this we need not and do not now decide. However that may be, and even assuming that this court's discretion to notice an erroneous instruction to which no objection was taken has survived Rule 30, no serious error so plainly appears as to require reversal.

■ Turning to the specific counts, we think the evidence adequate to support the verdict, for after verdict all permissible inferences must be made in favor of the prosecution. Each of the nine counts in the "short" indictment charges a separate transaction with Bersid Sportswear Co., a partnership composed of two brothers; it is evidenced by an invoice, which names "Frank Cohen" or "Frank Corelli" as seller, and by the buyer's check given in payment. One of the partners testified that "Berger would come up to the office and we would pay against these invoices. * * * Well, he would arrange the transaction, either he would endorse the check or we would give him cash or give him the check, whichever the case may be." Berger was Margolin's agent. His collection in New York of either check or cash in payment of the invoice established venue. See United States v. Sherman Auto Corp., supra.

■ We may deal with the counts in the "long" indictment in groups, as have the parties. Counts 55 to 69: These were transactions between "Frank Cohen" as seller and Breton Looms as buyer. The buyer was represented by witness Jason. He was not sure whether he had his first conversation with Margolin in New York or in Brooklyn. Under the arrangements made, the yarn was paid for only after

Margolin had had the goods transferred to the buyer's account by the dyers in Philadelphia, and the latter had notified the buyer. As to count 55 Jason said that payment was made to Margolin in New York by a check, which was immediately endorsed by and cashed for him. The sale underlying count 56 was handled similarly to the sale of count 55, except that Margolin's agent Berger received the check in New York. As to the remainder of this group of counts, there is no clear evidence as to where payment was made, but it is clear that Breton Looms did not pay until after notification by the dyer that the goods had been transferred to its account. Such notification was received in New York, and the dyer's act in causing it to be delivered here may be ascribed to the seller, since he instructed the dyer to make the transfer and give the notification. Hence the seller performed through his agent, in the southern district, an act which was part of the prohibited transfer of title, for the buyer's assent is essential to the transfer and may be inferred from lapse of time after notification of appropriation of the goods or from affirmative conduct such as payment. See Williston, Sales, 2d Ed., 563.

■ Counts 70 to 88: Rosenthal, president of Glasgow Sportswear, the buyer, testified that the agreements for sale covered by these counts were initiated by telephone calls from Margolin in Brooklyn to Rosenthal in New York, the former naming a price and the latter accepting it. This evidence of telephone negotiations will support venue under the charge as given, despite the doubts later elicited from the witness as to who initiated the telephone communications. The jury could accept the earlier testimony of the witness and reject his later doubts. Zimberg v. United States, 1 Cir., 142 F.2d 132, 136, certiorari denied 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573.

■ Counts 100 to 107: Zala, for the buyer, made his initial arrangements with Margolin in Brooklyn; they apparently agreed in general terms that Zala would buy yarn when Margolin had any to sell. The particular contracts covered by this group of counts were subsequently arranged by telephone calls between Zala in

New York and Margolin in Brooklyn. Such telephone negotiations afford a basis for venue in the southern district regardless of who made the call.

Counts 108 and 109: The contracts involved in these counts were made by telephone talks between Phillips in New York and Margolin in Brooklyn. In addition to this basis for venue Phillips testified that the yarn was delivered to his plant in the Bronx and that the contracts required the seller to pay the truckman's charges for delivery. The appellants concede there is some evidence of venue under these counts.

Counts 115 and 116: These counts relate to contracts made in Brooklyn at personal meetings between Margolin and Sapin who represented the buyer, Reliable Knit Sportswear. Sapin paid for the yarn in advance before Margolin was either to send it to the dyer or to instruct the dyer to transfer yarn held for Margolin's account. The evidence as to how payment was made is somewhat vague. Each of the invoices bore the name "Frank Cohen" and a Broadway, New York address as seller, and the buyer's check was payable to Frank Cohen. Sapin first said that the check was mailed by his bookkeeper "To Brooklyn, wherever the address was." When his attention was called to Frank Cohen's Broadway, New York address, he said "Probably it was mailed to New York. I don't know. I didn't watch the address." If it was mailed to the Broadway, New York address, the inference is inevitable that Margolin had some agent in New York to forward it from there to Brooklyn, since the check went through the bank and was paid. And there is evidence that Margolin arranged for telephone calls for "Frank Cohen" to be received at the New York address. If Margolin's agent obtained the check in New York, venue was properly laid in the southern district, as we have already held with respect to the counts of the "short" indictment. Since it is likely that a bookkeeper would mail the check to the seller's address appearing on the invoice, we think that the jury was justified in inferring that that is what happened in spite of Sapin's uncertainty.

■ With respect to conviction under the conspiracy indictment it is contended that since the Emergency Price Control Act makes an agreement to sell above the ceiling price a misdemeanor, Congress must have intended to exclude application of the conspiracy statute under which punishment for a felony may be imposed. A similar contention was rejected in Blumenthal v. United States, 9 Cir., 158 F.2d 883, rehearing denied 9 Cir., 158 F.2d 762, certiorari granted 1947, 331 U.S. 799, 67 S.Ct. 1306. We likewise reject it.

■ Finally the appellants contend that the evidence presented at the trial failed to prove that they sold wool knitting yarn at prices above the applicable ceiling prices. This contention first appeared in an additional brief filed on behalf of Bushwick Mills, Inc., by a new attorney on the day of the argument. The Government contends that it is not available to the appellants in view of a stipulation by counsel as to the points to be relied upon on the appeal. However, we doubt if the stipulation should be construed to exclude the contention and we shall proceed to consider it on the merits. The appellants argue that the prosecution proved the maximum ceiling prices for Bradford knitting and French spinning yarn but not for Bradford weaving yarn, and, since the technical descriptions on the invoices in evidence could apply as well to Bradford weaving as to Bradford knitting or French spinning yarn, it was incumbent on the Government to prove that the prices charged by the defendants were in excess of the maximum prices for Bradford weaving yarn. The Government's calculations of alleged overcharges are contained in schedule analyses of which exhibit 455 is typical. This shows (1) "grade" and (2) "Unit Price Per Lb– Natural," both taken from the sellers' invoices, and (3) "Ceiling Price Per Lb.," taken from Revised Price Schedule 58 (appendix D). The excess of (3) over (2) showed the overcharge. The witness who prepared exhibit 455 testified that in determining the ceiling prices listed in column (3) he took the ceiling prices of Bradford knitting yarn and French spinning yarn and did not consider the ceiling prices of Bradford weaving yarn. This the appellants say was a fatal omission. We do not think so. There

was proof that the appellants had purchased knitting yarns. While this was not conclusive since they might have purchased weaving yarn from other dealers, it does tend to support an inference, in the absence of any evidence to the contrary, that what they sold was knitting yarn. Further support for such an inference exists in the testimony of witness Leifer that the goods were sold in the knitting trade and "They were not weaving yarns." Moreover, an examination of the invoices and of appendix D of the Price Schedule indicates that the selling prices were higher than the maximum ceiling prices for Bradford weaving yarns as well as for Bradford knitting or French spinning yarns. And there is the significant testimony of Berger that he knew that the goods were being sold above ceiling and that he spoke to Margolin of the danger of so doing. We have no doubt that the jury reached a correct verdict and that the record is sufficient to support it.

Judgments affirmed.