**FERRIS et al. v. UNITED STATES.**

No. 5827.

Circuit Court of Appeals, Ninth Circuit.

May 12, 1930.

Rehearing Denied June 20, 1930.

James B. O'Connor and Harold C. Faulkner, both of San Francisco, Cal., for appellants.

Geo. J. Hatfield, U. S. Atty., of San Francisco, Cal., and Albert E. Sheets, Asst. U. S. Atty., of Sacramento, Cal.

Before DIETRICH and WILBUR, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

Appellants were jointly indicted with James Sanchez and Frank Wilson for the unlawful transportation of whisky and gin, and for a conspiracy to so transport. Defendants Sanchez and Wilson pleaded guilty. Appellants pleaded not guilty, and upon trial were convicted. Since taking an appeal, appellant Finney died.

The specifications of error relied upon present questions of the sufficiency of the evidence to support the verdict, rulings upon the admission of certain testimony, and the correctness of an instruction.

About 8 o'clock on the morning of March 6, 1929, the sheriff of Sonoma county, state of California, and one of his deputies stopped a green-painted autotruck driven by the defendants Sanchez and Wilson upon a highway in Sonoma county, near Monte Rio, at a point about six or eight miles in an air line from the Pacific Coast. The truck was found to contain 151 cases of gin and whisky and some sacks containing whisky over which was a covering of canvas. Sanchez and Wilson were placed under arrest, and were handcuffed together. Within a space of time, estimated by the sheriff to be two or three minutes following the arrest of Sanchez and Wilson, a blue sedan automobile was observed approaching and going in the same direction which the truck and officers' car had been proceeding. The sedan was stopped by the officers when it reached the truck. In the sedan were the appellants. They also were placed under arrest; Ferris and Marino being handcuffed together. At the time of their arrest, appellant Ferris gave his name as Williams, and Marino that of Mays. Ferris, who was driving the sedan, was carrying a .38 Colt revolver, loaded. Upon the floor of the car in front of where Marino had been sitting, beside Ferris, there was found a Thompson machine gun with twenty loaded shells in the clip.

Upon discovering the machine gun, and in reply to a question of the sheriff as to the purpose of the gun, the appellant Ferris said: "Well, we haven't got that for you, Sheriff; we have got that for hijackers." Later, according to the deputy sheriff, Marino stated concerning this gun that they had been hunting, and that he "had taken the machine gun to hunt quail," and the witness stated that "he said it seriously, no smiles." The sheriff testified that Marino said they had been camping, and, in reference to the gun, said: "Well, we used it for target practice," and that he thought "he said something about shooting quail." In the back seat of the sedan was found the deceased, appellant Finney, apparently asleep. Between the seats of the sedan, in addition to a little sand, some bedding, and provisions, was found a coil of three-inch rope, about ninety feet in length, and weighing approximately 150 pounds. Concerning this rope, the deputy sheriff testified: "There is green on this rope, on one end of it, exactly the same as the paint on the truck." With the exception of the defendant Wilson, who was the driver of the truck, and who was wearing khaki pants, all the defendants were wearing the same kind of pants, "a sort of black jeans." There was found in the truck an extra pair of black jeans, which at the time were wet and sandy.

To the question: "Within a radius of forty miles there, how many places could a boat land on the coast," upon objection overruled, the sheriff replied: "There are several. I don't know how many there would be, but a number of places, I think. I know of one other place where I have seen liquor that has been landed. This automobile was coming from that general direction."

H. O. Neilsen, a witness for the government, over appellants' objection, testified that he was a boatswain in the coast guard service and acquainted with the Sonoma County coast line; that within a radius of forty miles from where the truck was stopped there were about ten places marked on the chart, and perhaps ten more, where small boats could land; that a rope similar to that taken from the sedan was used by seafaring men for mooring lines, or a towline; that in landing a boat on the coast he would use a dory—a flat bottom boat—varying in size from fourteen to twenty-five feet in length.

Over appellants' objection, the arresting

officers were permitted to testify relative to the conduct of the defendants Wilson and Sanchez following their arrest and preceding the arrival and arrest of appellants. This testimony was to the effect that these two defendants acted very nervous; that they kept edging back toward the rear of the truck, behind which and at the side of the road was the officers' car; that they kept watching down the road; that they edged around back of the truck, and were ordered back; that they again got back clear to the right-hand corner of the truck, when they were again ordered back to the side of the truck near its left rear corner, whereupon the sheriff and his deputy, standing behind them, upon looking down the road, saw appellants' car approaching.

The sheriff testified that he took the defendants from the place of arrest to Santa Rosa in his own car, and that while on that trip the appellant Ferris repeated the statement that they did not have the gun for officers, but for hijackers, and "wanted to know if there was not some way of fixing it up." The sheriff also testified Ferris said, "I thought the officers in this county were all right to come through here." The sheriff further testified: "In this conversation between myself and the defendants on the way in I intended at that time to charge them with the illegal possession of fire arms. That is the only offense I ever charged them with."

At no time does it appear that the men on the truck and the men in the sedan recognized each other, and appellants denied acquaintance with the men on the truck.

Before taking up the question of the sufficiency of the evidence, the rulings as to the admission of certain evidence will be disposed of.

■ It is urged that it was error to admit testimony concerning the conduct of the defendants Sanchez and Wilson following their arrest, which conduct was not in the presence of appellants. It is the contention of the government that the evidence complained of justified the conclusion that the men on the truck who "kept watching down the road" were expecting the arrival of another car, and, taken in connection with the repeated "edging back" to the rear end of the truck where the officers' car would be between them and an approaching convoy, they would be safe from possible gun fire of rescuers. Counsel for appellants contend that the conspiracy was terminated so far as Sanchez and Wilson were concerned by their arrest,

and that the same rule should be applied with respect to conduct as to statements made by co-conspirators after the termination of the conspiracy. The authorities cited relate to declarations only. The reasons for excluding statements of a coconspirator not on trial, made after the termination of the conspiracy, do not apply with the same force to conduct. Statements, whether made during the existence of the conspiracy or subsequent to its termination, involve not only the question of fact that the statement was made, but also the question of its credibility. The rule, however, as generally stated, would appear to apply to acts as well as statements. However, in the case at bar we are of the opinion the conspiracy was not terminated even as to Sanchez and Wilson upon their arrest. The object of the conspiracy was the successful transportation of contraband liquor. The means adopted to carry that object into execution was the actual transportation by defendants Sanchez and Wilson driving and accompanying the loaded auto-truck under the convoy of appellants equipped with a machine gun and Colt revolver. Until the convoy was hors de combat by the arrest of appellants the conspiracy was not terminated as to any of its participants.

In the case of Logan v. United States, 144 U. S. 263, 308, 12 S. Ct. 617, 632, 36 L. Ed. 429, Mr. Justice Gray, speaking for the court, said:

"Doubtless, in all cases of conspiracy, the act of one conspirator in the prosecution of the enterprise is considered the act of all, and is evidence against all. U. S. v. Gooding, 12 Wheat. 460, 469 [6 L. Ed. 693]. But only those acts and declarations are admissible under this rule which are done and made while the conspiracy is pending, and in furtherance of its object. * * * Tested by this rule, it is quite clear that the defendants on trial could not be affected by the admissions made by others of the alleged conspirators after the conspiracy had ended by the attack on the prisoners, the killing of two of them, and the dispersion of the mob. There is no evidence in the record tending to show that the conspiracy continued after that time."

The evidence in this case tends to show that the conspiracy continued until the arrest of appellants.

■ It is contended that the court erred in admitting in evidence the testimony concerning the proximity of places along the coast

line where small boats could be landed. It is clear, we think, error was not committed in the admission of this testimony. We have here as an established fact a truck upon a highway within a few miles of the coast line, carrying a very considerable load of contraband liquors bearing foreign labels. The amount and character of the merchandise is readily suggestive of its unlawful entry by boat at some convenient coast point. Under such circumstances the jury is entitled to consider the topography of the adjacent country in connection with other facts and circumstances established in the case.

■ The assignment of error to the effect that the court erred in admitting testimony concerning the uses to which the rope found in appellants' automobile could be applied is unsupported by any citation of authority, and is clearly without merit.

It is the contention of appellants that the evidence upon the part of the government consists only of a number of circumstances which are consistent with innocence, and hence legally insufficient to support a verdict of guilty. Counsel assert: "There is not a fact in the record that is not consistent with the theory that the appellants at the time of their arrest were seeking to overtake the automobile truck for the purpose of hijacking it."

■ Where, as in this case, circumstantial evidence is relied upon to support a verdict of guilty, all the circumstances so relied upon must be consistent with each other, consistent with the hypothesis of guilt, and inconsistent with every reasonable hypothesis of innocence. It does not follow, however, from this statement of the rule that the admission in evidence of certain circumstances which may also be consistent with innocence is determinative of the question of the sufficiency of the evidence, unless such circumstances are essential to the government's case.

Taken alone, the giving of assumed names and the character of clothing worn by the several defendants might be regarded only as suspicious circumstances, insufficient in themselves to support a conviction. Sugarman et al. v. United States (C. C. A.) 35 F. (2d) 663. The statements made by the appellant Ferris to the sheriff while on the way to Santa Rosa, the county seat of Sonoma county, as to whether "there was not some way of fixing it up," might be regarded as referring to the offense against the laws of the state relative to possessing a machine gun and the carrying of a concealed weapon, but not to his statement that he "thought the of-

ficers in this county were all right- to come through here." The driving of a sedan car in itself was wholly consistent with innocence, but the driving of such a car with the occupants armed with a machine gun and carrying a heavy rope such as used for towing or mooring boats, one end having green on it exactly the same as the paint on the truck, presents a wholly different state of circumstances. These circumstances, taken in connection with the statements of the surviving appellants—one that the machine gun was carried for hijackers, and that of the other the wholly ridiculous statement that it was used for target practice and hunting quail—present a case consistent with guilt, and wholly inconsistent with any reasonable hypothesis of innocence.

■ Error is assigned in the giving of the following instruction:

"There is such a thing as lawful transportation of liquor but it is never legal unless those transporting it have a permit from the commissioner of internal revenue department to do so. There is no evidence in this case that the defendant has a permit but you can, if you see fit, ascertain from the circumstances whether or not this was a lawful transportation. You may look at the character of the locality where it was being transported. There can be no legal transportation of liquor for beverage purposes at any time. A permit is never issued to transport liquor for beverage purposes. You may look at the nature of the liquor. On its face it appears to be foreign liquor, whiskey. The whiskey is branded 'Scotch production,' I think, and the gin is branded as Holland production, Dutch production. There is a presumption whenever liquor is found in the possession of anyone that the possession is for unlawful purposes, namely for sale or otherwise unlawfully furnishing it to anyone so in so far as this liquor was found in the possession of those defendants who have plead guilty the presumption is that they had possession unlawfully and so they were likewise transporting it unlawfully.

"If from all the circumstances in the case you arrive at a conclusion the liquor was being unlawfully transported then it is for you to say whether these defendants had any part in that act."

The giving of this instruction is clearly unobjectionable in so far as the count of the indictment charging unlawful transportation is concerned. It is the contention of counsel for the government that this instruction was given only in relation to that count. The rec-

ord and the language of the instruction support this contention. Even if it may be said that it may not have been entirely clear to the jury that it did not also apply to the count charging conspiracy to transport unlawfully, the giving of the instruction could not then be said to be prejudicial error, if error at all. Counsel for appellants cite the case of Linden v. United States, 2 F.(2d) 817, 818, in which the Circuit Court of Appeals for the Third Circuit, upon a trial of defendants for conspiracy to possess and transport intoxicating liquors, held in effect that, conspiracy being an offense wholly independent of the National Prohibition Act, it was error to instruct in the language of this latter statute that possession was "prima facie evidence" that such liquor was kept for an unlawful purpose, "and the burden of proof shall be upon the possessor * * * to prove that such liquor was lawfully acquired, possessed, and used," where the trial court had omitted "to give any instruction on the rule of evidence and where lay the burden of proof in a conspiracy case."

In the case at bar the court below gave the general instruction applicable to both counts: "The burden is on the Government to prove the guilt of the defendants beyond a reasonable doubt or you are bound to acquit them." Without subscribing to or taking issue with the views expressed by the court in the Linden Case, it may be said that the conditions under which intoxicating liquors may be possessed or transported by lawful permit are so few and so circumscribed that the conclusion inevitably follows from facts and circumstances such as appear in this case that the possession and transportation were without permit, and unlawful.

In the case of Vukich v. United States (C. C. A.) 28 F.(2d) 666, 669, the appellant was indicted for violation of the revenue laws; the first count charging that he was carrying on the business of a distiller without having given a bond as required by law. In that case, dealing with a similar question to that presented here, this court said:

"A distillery, such as shown by the evidence in this case to have been in operation, was manifestly an unlawful distillery, even without direct proof that it was being operated without permit or bond. No one with knowledge of its existence could be connected with its operation, without knowing that the person or persons carrying on its business were operating without bond, and otherwise unlawfully."

Judgment as to appellants Ferris and Marino affirmed.