### HAGNER et al. v. UNITED STATES.
#### No. 5410.

Court of Appeals of the District of Columbia.

Argued Oct. 8, 1931.
Decided Nov. 23, 1931.

Rehearing Denied Dec. 5, 1931.

Lucien H. Van Doren, of Washington, D. C., for appellants.

Leo A. Rover, William H. Collins, and Michael F. Keough, all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellants were indicted and tried in the Supreme Court of the District of Columbia for violating section 215, United States Criminal Code (USCA tit. 18, § 338). The indictment contained a number of counts. The first is typical of the others. After describing a scheme and artifice to defraud through the sale of certain false accounts-receivable, it alleged "that the said defendants (appellants) so having devised and intended to devise said scheme and artifice to defraud, for the purpose of executing said scheme and artifice to defraud, on, to wit, April 19, 1927, did place and cause to be placed in the post office at the city of Scranton, in the State of Pennsylvania, to be sent and delivered by the post office establishment of the United States of America, to the addressee thereof, three certain accounts inclosed in a certain envelope addressed to Merchants' Transfer and Storage Company, 920 E Street N. W., Washington, D. C. * * *"

A jury found appellants guilty on each count. Thereupon they moved in arrest of judgment, and from the decision of the lower court overruling their motion this appeal is taken. The basis of the motion is that the indictment on its face shows that the trial court (District of Columbia court) had

no jurisdiction because the indictment failed to show the commission of any crime within the jurisdiction of that court. Stated otherwise, the claim was and is that the indictment charged the commission of an offense in Pennsylvania and not in the District of Columbia. A determination of this question involves an examination of the act of Congress under which the charge is laid. The material part of section 215 of the Criminal Code is as follows: "Whoever, having devised or intending to devise any scheme or artifice to defraud, * * * shall, for the purpose of executing such scheme or artifice * * * place, or cause to be placed, any letter * * * in any post office, * * * to be sent or delivered * * *, or shall take or receive any such therefrom * * *, or shall knowingly cause to be delivered by mail according to the direction thereon * * * any such letter * * * shall be fined, * * * or imprisoned. * * *"

The indictment here charges, as we have seen, a scheme to defraud, and also that for the purpose of executing it defendants (appellants) placed a letter in the post office in the city of Scranton, to be sent and delivered by the post office establishment to the addressee thereof in Washington, but it wholly failed to charge the delivery of the letter at the point of destination. It will thus be seen that the indictment is drawn in accordance with the language of the first provision of the statute making it an offense, under the circumstances alleged, to place a letter in a post office to be sent or delivered to the addressee thereof, and the question is whether such a charge, alleging only the act of mailing or depositing the letter in Pennsylvania, is triable in the District of Columbia.

The original statute (215 Criminal Code) did not contain the clause now in the statute making it also an offense for the deviser of the scheme to cause a letter "to be delivered by mail according to the direction thereon," and the Supreme Court, speaking of the statute as it formerly was, has declared the place of the deposit to be the place of the commission of the offense. Salinger v. Loisel, 265 U. S. 224, 234, 44 S. Ct. 519, 522, 68 L. Ed. 989. And at the same time, speaking of the effect and purpose of the introduction of the new clause into the statute, said: "That clause plainly provides for the punishment of the deviser of the scheme or artifice where he causes a letter in furtherance of it to be delivered by the mail according to the direction of the letter. This is done by way of enlarging the original definition of the offense, the clause dealing with the placing of

such a letter in a mail depository being retained. Evidently Congress intended to make the statute more effective and to that end to change it so that where the letter is delivered according to the direction, such wrongful use of the mail may be dealt with in the district of the delivery as well as in that of the deposit."

That is to say, as we assume, that under the present statute the government may elect whether to bring the indictment in the district in which the letter is mailed or the district in which it is received, but obviously in either case the proper averments are essential.

As the indictment in the present case charges the deposit of the letter in Scranton, and does not charge the delivery of the letter in the District of Columbia, it seems to us clear that appellants were not triable under it in the latter place. The placing of the letter in the post office in Scranton under the circumstances related in the indictment was, of course, sufficient to charge an offense committed there and triable there on a similar indictment found there, but the mailing alone without also charging delivery in Washington is not, we think, sufficient to charge an offense committed in the District of Columbia and triable there, for it is only by virtue of the amendment of the statute and upon the allegation that the letter mailed in the one place was duly delivered in the other that an offense may properly be charged and tried in the latter; and, if this were all, we should have to reverse, but we are confronted with another question which we feel we must notice of our own motion, namely, whether the defective allegation as to venue appearing on the face of the indictment is jurisdictional, and therefore may be taken advantage of by motion in arrest of judgment.

In this case the defendants were arraigned and pleaded not guilty, and went to trial and were convicted. Was their failure seasonably to object to the jurisdiction of the trial court a waiver of the right secured them by article 3, section 2, of the Constitution, to have a trial in the state and district in which the offense is alleged to have occurred?

In Kansas (Ex parte Mote, 98 Kan. 804, 160 P. 223) it was held that the constitutional guaranty insuring a person charged with crime a speedy trial by an impartial jury of the county in which the offense is alleged to have been committed is a personal privilege which the accused may waive, and that it is too late after plea to challenge the jurisdiction of the court. So in South Carolina,

State v. Browning, 70 S. C. 466, 50 S. E. 185, it was held that, notwithstanding the constitutional provision guaranteeing to every person charged with crime trial in the county in which the crime is alleged to have occurred, such right is waived when the defendant contests the case upon the merits. And so also in Nebraska (State v. Crinklaw, 40 Neb. 759, 59 N. W. 370) it was held that the constitutional right to trial by jury in the county in which the crime was committed is a personal privilege of the accused which would be held waived by his application for a change of venue. Cases from other states to the same effect will be found cited in the above-mentioned cases. Some of these cases are: Lightfoot v. Commonwealth, 80 Ky. 516; Hourigan v. Commonwealth, 94 Ky. 520, 23 S. W. 355; State v. Fitzgerald, 51 Minn. 534, 53 N. W. 799; State v. Gamble, 119 Mo. 427, 24 S. W. 1030; In re Blum, 9 Misc. Rep. 571, 30 N. Y. S. 396; and People v. Penn, 302 Ill. 488, 135 N. E. 92.

Congress by section 24 of the Judicial Code (28 USCA § 41(2) has conferred upon the District Courts (which include the Supreme Court of the District of Columbia) jurisdiction "of all crimes and offenses cognizable under the authority of the United States," and, as the Supreme Court said in Patton v. U. S., 281 U. S. 276, 299, 50 S. Ct. 253, 258, 74 L. Ed. 854, 70 A. L. R. 263, "This is a broad and comprehensive grant, and gives the courts named power to try every criminal case cognizable under the authority of the United States," but subject, of course, to any controlling provision of the Constitution. Except, therefore, that the Constitution provides the venue for trial of offenses against the laws of the United States, there is nothing otherwise to prevent the enactment by Congress of a law permitting and providing for the trial of criminal cases anywhere within the United States. But by article 3, section 2, the trial of all crimes, except impeachment, "shall be by jury; * * * in the State where the said Crimes shall have been committed." This article therefore guarantees to a person charged with crime against the United States the double right to be tried by jury and to be tried in the state where the crime was committed, and, until the decision of the Supreme Court in Schick v. U. S., 195 U. S. 65, 24 S. Ct. 826, 49 L. Ed. 99, 1 Ann. Cas. 585, in which it was held the right to a jury trial in a misdemeanor case might be waived, and the Patton Case, supra, in which it was held that the right to trial by jury in any criminal case might be waived, it was generally thought that these constitutional safeguards were intended as much in the public interest as in the interest of the person charged with the crime, and therefore were imperative and nonwaivable, but the opinion of the Supreme Court in the Patton Case has disposed of this contention—at least as to jury trial—adversely, for there it is specifically held that the theory that the right to waive a jury should be denied on the grounds of public policy is unsound and should be rejected, and, at page 298 of 281 U. S., 50 S. Ct. 253, 258, the court, referring to article 3, section 2, of the Constitution, said:

"Upon this view of the constitutional provisions we conclude that Article 3, § 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election."

If, as is thus decided, a person charged with crime may forego a jury trial by agreeing to waive a jury, it would, we think, be difficult to sustain the view that he may not also in the same manner waive the provision in the same article with relation to the place of trial. Logically it seems to us to follow that both are in the same category. Whatever sanctity growing out of established custom obtains with relation to the trial of a defendant in the vicinage of the crime obtains with equal force with relation to the right to trial by jury, for it was declared as a fundamental principle of the common law in Magna Charta that a person charged with crime should not be convicted except by the unanimous verdict of a jury, and this principle of the common law was brought from their old into their new homes by the colonists who first settled this country, but the rule of the common law is expressly rejected in the Patton Case as no longer justified by modern conditions, and, in line with this thought, the Supreme Court quotes in the Patton Case with approval from Hack v. State, 141 Wis. 346, 351, 352, 124 N. W. 492, 45 L. R. A. (N. S.) 664, as follows:

"Thanks to the humane policy of the modern criminal law, we have changed all these conditions. The man now charged with crime is furnished the most complete opportunity for making his defense. He may testify in his own behalf; if he be poor, he may have counsel furnished him by the state, and may have his witnesses summoned and paid for by the state; not infrequently he is thus furnished counsel more able than the attorney for the state, in short the modern law has taken as great pains to surround the accused person with the means to effectively

make his defense as the ancient law took pains to prevent that consummation. The reasons which in some sense justified the former attitude of the courts have therefore disappeared, save perhaps in capital cases, and the question is, Shall we adhere to the principle based upon conditions no longer existing? No sound reason occurs to us why a person accused of a lesser crime or misdemeanor, who comes into court with his attorney, fully advised of all his rights, and furnished with every means of making his defense, should not be held to waive a right or privilege for which he does not ask, just as a party to a civil action waives such a right by not asking for it."

If this reasoning be sound, and if the implication which it carries be reasonably accepted, it would seem to us to follow that neither the provision in article 3, section 2, of the Constitution, with relation to the place of trial nor the similar provision in the Sixth Amendment—which the Supreme Court held "is not to be regarded as modifying or altering the earlier provision" (article 3, section 2)—is jurisdictional, but were meant and are to be construed to confer rights upon the accused which he may forego at his election. It has apparently never been doubted from the beginning of our judicial history the constitutional right of either party in a suit at common law for trial by jury might be waived. Kearney v. Case, 12 Wall. 275, 20 L. Ed. 395; Kelsey v. Forsyth, 21 How. 85, 16 L. Ed. 32; Duignan v. U. S., 274 U. S. 195, 199, 47 S. Ct. 566, 568, 71 L. Ed. 996. In the latter case it was said: "Appellant's failure to demand a trial by a common-law jury amounted, we think, to a waiver of the constitutional right, if any, now claimed."

It is likewise held that the clause in the Judiciary Act, which requires that, where the jurisdiction of the court is founded upon the fact that the parties are citizens of different states, suit shall be brought only in the district where one of them resides, may, in any case of diverse citizenship, be waived by appearing and pleading to the merits. In re Moore, 209 U. S. 490, 28 S. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164. If, therefore, the premise be granted that the constitutional provision for trial in the state of the offense is not jurisdictional, there would seem to be a reasonable, and indeed conclusive, parallelism between the two classes of cases, civil and criminal.

In the case now under consideration, as we have already seen, the defendants (appellants) appeared, and upon their arraignment pleaded not guilty. They were represented by counsel. They might have pleaded to the jurisdiction. They did not. They elected to go to trial, on an indictment duly charging a violation of a law of the United States, in a court having general jurisdiction of the class of offenses charged. This, we think, was as complete an agreement to waive their constitutional privilege to refuse to be tried in the District of Columbia as though it were in express words. This is the effect of the decisions of the state courts mentioned in this opinion, and it is the universal rule in proceedings in civil cases in the federal courts, for in the latter it has been held that even the filing of a demurrer waives all defenses in the service and of special privileges of the defendant in respect to the particular court in which the action is brought. Western Loan & Sav. Co. v. Mining Company, 210 U. S. 368, 28 S. Ct. 720, 52 L. Ed. 1101.

In these circumstances we are constrained to hold that while the defendants (appellants) might by a seasonable plea to the jurisdiction have avoided trial in the courts of the District of Columbia under this particular indictment, their submission to that court was a waiver of the privilege accorded them by article 3, section 2, of the Constitution, and in such circumstances they may not after trial and conviction for the first time object to that court's jurisdiction.

Affirmed.