## CRONO v. UNITED STATES.

No. 6702.

Circuit Court of Appeals, Ninth Circuit.

May 31, 1932.

Jack Crono, of Steilacoom, Wash., in pro. per.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter, Asst. U. S. Atty., both of Los Angeles, Cal.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

Appellant, Jack Crono, hereinafter referred to as defendant, and five others were jointly indicted in the United States District Court for the Southern District of California, Central Division, upon three counts. The third count was dismissed at the trial. The first count of the indictment charged a conspiracy to violate the National Prohibition Act by manufacturing intoxicating liquor;

the second count charged the unlawful manufacture of intoxicating liquor in violation of section 3, title 2 of the National Prohibition Act of October 28, 1919 (27 USCA § 12), as amended March 2, 1929, c. 473 (45 Stat. 1446). Defendant and Mary Calli, one of the other defendants, were tried before a jury and found guilty as charged in counts 1 and 2. The other defendants did not appear for trial.

Defendant has brought this appeal in propria persona. He has, however, furnished us with a voluminous brief, evidently prepared by a lawyer or by one who is thoroughly familiar with criminal procedure and practice, in which are presented and argued the rulings of the trial court and the assignments of error upon which defendant relies for reversal.

█ At the conclusion of the government's case, defendant moved for a directed verdict on the ground that the evidence failed to prove the existence of the conspiracy charged and was insufficient to prove the charge of illegal manufacture of intoxicating liquor. The motion was overruled and exception reserved, and the ruling is now properly presented to this court for review.

Briefly, the evidence on behalf of the prosecution showed that on several occasions during April and May, 1930, a prohibition agent observed a certain Chevrolet truck receive and take away sacks of sugar, stamped "corn," from the loading platform of the Italian Wholesale Grocery Company in Los Angeles; that this agent followed the truck to the Vaughn Ranch, near San Bernardino; that the driver of the truck was one Matranga, indicted with defendant; that on these occasions the truck was accompanied on its journeys by a certain Maxwell automobile containing the defendants Mary Calli and Pete Calli, her husband; that on the night of May 7, 1930, agents went to the ranch in question, noticed an odor of mash as they approached, and found a complete still and apparatus and a quantity of intoxicating liquor in a building on the ranch. They arrested one Morgano who was found with the still. They then entered the ranch dwelling and found therein Matranga, the driver of the truck, Mary Calli, and Pete Calli, and arrested them. The Chevrolet truck and Maxwell car were also found on the premises.

About 3 a. m., a few hours after the arrest of the other defendants, this defendant, driving a Buick sedan automobile, turned off the highway and drove to the dwelling with the lights of his car out, got out of the auto-mobile, and walked into the barn. He was arrested by one of the officers within possibly three feet of the still, which still was in operation when the officers arrived at the dwelling. One of the officers testified that the defendant looked surprised and, addressing the officer, said, "We can fix this up all right." The officer replied, "I don't think so." Defendant then said, "Oh, yes we can."

The arresting officer searched the defendant and found on his person a bill, hereinafter referred to, from the Italian Wholesale Grocery Company. While defendant was there under arrest he asked another of the officers who was "in charge of the party," and on being informed said: "Well, I just wanted to know. We ought to fix this up."

Defendant was positively identified by witnesses as a person who, on March 6, signed an application for telephone service and on March 22 signed an application for power for the premises in question. On both occasions he did not sign his own name, but the name "John Murphey."

There was also other circumstantial evidence tending to establish defendant's guilt. No testimony was offered on behalf of defendant.

█ We think the trial court committed no error in overruling defendant's motion for a directed verdict and in allowing the jury to weigh these alleged facts against the presumption of innocence which shielded defendant from the charge made. The duty of this court is "but to declare whether the jury had the right to pass on what evidence there was." Felder v. United States (C. C. A. 2) 9 F.(2d) 872, 875, certiorari denied 270 U. S. 648, 46 S. Ct. 348, 70 L. Ed. 779. There being substantial evidence in support of both charges, the court would have erred if it had peremptorily directed an acquittal upon either of the counts. Pierce v. United States, 252 U. S. 239, 251, 40 S. Ct. 205, 64 L. Ed. 542.

█ The bill of the Italian Wholesale Grocery Company taken from defendant's person at the time of his arrest was admitted in evidence over the objection that it was immaterial. The bill is written in longhand and is dated and receipted May 5, 1930, for undisclosed items purchased during April and May of 1930, amounting to $1,565, and is addressed, apparently, to "Jack Krone." Defendant now contends, however, that the name appearing on the bill is "Jack Kime," not "Krone." A sufficient answer to this argument is the fact that no such point or objection was made at the time it was offered in evidence; but, in any event, we think that

the jury was justified in finding, as it evidently did, that the name on the bill, although somewhat indistinct, is "Krone" and not "Kime."

It is insisted that the court erred in denying defendant's motion for a continuance made at the commencement of the trial by the attorney who was employed to represent defendant in lieu of other counsel who had withdrawn from the case a day or two prior to the trial.

The record shows that the order setting the case for trial on March 24, 1931, was entered on February 2, 1931, and that due notice thereof was given to the defendant's counsel. Counsel who was substituted based his request for continuance upon the ground that he was retained only on the Saturday previous to the day of the trial, Tuesday, March 24, and had not consulted with the defendant and knew nothing about the case. The trial court denied a continuance but did recess for one hour to enable counsel to consult with the defendant. Considering all the facts and circumstances as disclosed by the record, we cannot hold that any substantial right of the defendant was infringed or find any abuse of discretion by the trial court. There is no reason disclosed by the record for the belief that the result would have been different had the attorney originally employed represented the defendant at the trial.

In this connection defendant states in his brief: "Now in justice to Mr. Higgins [the attorney who was substituted], appellant wishes to state that he believes, that within the limitation placed around him by the court in the order of substitution, and the fact that he knew nothing about the case coupled with what the record shows that he probably was with limited experience in criminal matters, Mr. Higgins honestly and faithfully represented appellant in the trial, and even though this admission be an answer to the argument heretofore advanced for a new trial he nevertheless stands by it."

The action of the court upon an application for a continuance is purely a matter of discretion, and not subject to review unless it be clearly shown that such discretion has been abused. Isaacs v. United States, 159 U. S. 487, 16 S. Ct. 51, 40 L. Ed. 229; Warren v. United States (C. C. A. 8) 250 F. 89, 92; United States v Rosenstein (C. C. A. 2) 34 F.(2d) 630, 635.

It is also urged that the sentence imposed upon defendant, although within the statutory limits, was excessive. A similar contention was made in the case of Lonergan v. United States (C. C. A. 8) 287 F. 538, 539, where the court said: "It is, also, objected that the sentence was excessive and 'not in keeping with the character or gravity of the offense or the degree of moral turpitude involved in the alleged crime.' We cannot consider such a matter, the amount of punishment being a matter exclusively within the judgment of the trial court."

There are cogent reasons why this should be so. The trial judge who imposes sentence, having heard all the testimony, having seen all the witnesses, being fully informed as to all the facts, and being invested with authority, before pronouncing sentence, to inquire into defendant's previous conduct and reputation, is better able to fix the amount and duration of the punishment than is an appellate court.

We have carefully read the entire record and all the objections taken during the trial and do not find any reversible error. Nor do we find any evidence that the record shows errors not excepted to which would justify a reversal.

Affirmed.