## STOPPELLI v. UNITED STATES.

### No. 12373.

United States Court of Appeals
Ninth Circuit.

June 26, 1950.

Rehearing Denied Aug. 2, 1950.

Writ of Certiorari Denied Oct. 23, 1950.

See 71 S.Ct. 88.

J. W. Ehrlich, San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Attorney, Joseph Karesh, Asst. U. S. Attorney, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, BONE, Circuit Judge, and GOODMAN, District Judge.

GOODMAN, District Judge.

Stoppelli and four others were named defendants in a three count indictment. The first count charged the sale of heroin. Harrison Anti-Narcotic Act, 26 U.S.C.A. §§ 2553, 2557. The second count charged the concealment of heroin. Jones-Miller Act, 21 U.S.C.A. § 174. The third count charged conspiracy to commit the offenses charged in the first two. All defendants were convicted by a jury on all counts. The District Judge granted Stoppelli's motion for a new trial as to the third (conspiracy) count. Stoppelli appeals from the judgment and the concurrent sentences of five and six years imprisonment imposed on the first and second counts.

Stoppelli's co-defendants participated in the attempted sale in Oakland, California, of a non-original unstamped package containing 12 envelopes of the same size, color and appearance, each containing part of a total quantity of 10 ounces and 436 grains of heroin. The package of heroin was brought from New York by one Tony Sapoli. Stoppelli had been in New York and came to the jurisdiction of the trial court to surrender after the indictment was filed and a warrant of arrest issued. On one of the envelopes was appellant's fingerprint. The

government's fingerprint expert testified that the fingerprint was placed on the envelope at a time when it contained a powdery substance. Heroin is a powdery substance. The expert testified that in his opinion Stoppelli held the envelope, with a powdery substance in it, in his left hand, the print being that of the ring finger of the left hand. The print, the expert said, was placed on the envelope not more than four weeks, at the most, prior to his examination. He gave to the jury a detailed and technical explanation of his reasons for concluding that Stoppelli held the envelope in his hand at a time when it contained a powdery substance.

Stoppelli was present during the trial, was represented by counsel, but himself remained mute throughout.

His main point on this appeal is that the fingerprint evidence is insufficient to sustain the verdict. What he really means is that the trial court should have granted his motion for a directed verdict of acquittal upon the ground that there was no substantial evidence upon which the jury could have made a finding.

The fingerprint evidence was, of course, circumstantial. The precise question tendered is: Was it sufficient evidence to show Stoppelli "to have or *to have had* possession" of the heroin in the envelope? 21 U. S.C.A. § 174. (Emphasis added.)

The trial judge fully and accurately instructed the jury upon the doctrine of inferences as it applies to circumstantial evidence.[1]

The testimony of the fingerprint expert was sufficient to go to the jury if its nature was such that reasonable minds could differ as to whether inferences other than guilt could be drawn from it. It is not for us to say that the evidence was insufficient because we, or any of us, believe that inferences inconsistent with guilt may be drawn from it. To say that would make us triers of the fact. We may say that the evidence is insufficient to sustain the verdict only if we can conclude *as a matter of law* that reasonable minds, as triers of the fact, must be in agreement that reasonable hypotheses other than guilt could be drawn from the evidence. Curley v. U. S., 81 U. S.App. D.C. 229, 160 F.2d 229, 230. In the cited case, Judge Prettyman pertinently observes: "If the judge were to direct acquittal whenever in his opinion the evidence failed to exclude every hypothesis but that of guilt, he would preempt the functions of the jury. Under such rule, the judge would have to be convinced of guilt beyond peradventure of doubt before the jury would be permitted to consider the case." 160 F.2d at page 233. See also U. S. v. Perillo, 2 Cir., 164 F.2d 645.[2]

In this case, a reasonable jury mind might well have inquired: What was Stoppelli doing with *this particular* envelope anyhow? No doubt, flights of fancy, to infer innocent possession, could be indulged in. Stoppelli might have had powdered sugar in the envelope to feed his pet canary. But in that event, how did it get into the package of heroin? A reasonable mind

1. The court's instructions in this connection were as follows: "Where the evidence is susceptible to two reasonable inferences, one pointing to the guilt and the other to the innocence of a defendant, the jury should adopt the one of innocence and find him not guilty. * * Before you may find a defendant guilty upon circumstantial evidence, the circumstances must be consistent with each other and with the guilt of the defendant and inconsistent with any reasonable theory of his innocence and must show his guilt beyond a reasonable doubt."

2. This view is approved by the Supreme Court. Lavender v. Kurn, 327 U.S. 645, at page 653, 66 S.Ct. 740, 90 L.Ed. 916; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, at page 35, 64 S. Ct. 409, 412, 88 L.Ed. 520, where the court said: "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. * * * Courts are not free to re-weigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

would have to discard its common sense to indulge in such capricious vagaries. It is such speculation and caprice that juries are instructed to avoid in resolving the question of *reasonable doubt*.[3]

The experienced presiding judge below, before whom the trial picture unfolded, believed that the inference of guilt could rationally be drawn from the evidence. Upon the argument on motion for a new trial, he aptly stated: "* * * if at the time the defendant had it (the envelope) in his possession there was a powdery substance in it, and when captured by the officers it had a powdery substance, which consisted of heroin, isn't it rational to draw the inference that at the time the defendant had it in his possession it had heroin in it."

■ We are of the view that any possible objection to the expert's testimony would go to its weight.[4] Its weight or credence was within the exclusive province of the jury to evaluate. The jury had the right to pass on the evidence. Felder v. U. S., 2 Cir., 9 F.2d 872, 875; Crono v. U. S., 9 Cir., 59 F.2d 339, 340. It could not justly be excluded entirely as being of no substance.

■ Furthermore, under the charging statutes, the sometimes troublesome elements of intent are not here involved, for *possession* alone is sufficient for conviction.[5]

We are not able to conclude as a matter of law that the jury, pursuant to the court's instructions, could not reasonably draw the inference of guilt from the fingerprint evidence. In fact, it is the strongest kind of evidence. Parker v. King, 14 C.L.R. 681, 3 B.R.C. 68, High Court of Australia.

The true administration of criminal justice needs self-restraint on the part of the reviewing court in what is unfortunately sometimes a "ferreting out" quest for errors in a "cold record." The search for justice must not degenerate into a pursuit of complete abstract inerrancy—an unattainable goal when dealing with human beings.

We see neither the play nor the actors, but only the printed word—cold and colorless.[6] If justice is to be done, it is substance above all which must control our decision. We must weigh the evidence, not as triers of fact, but only to the extent necessary to determine whether it should have gained admission to the forum. The temptation to "try the facts" is strong; it must be resisted as if it were Satan.

■ Appellant claims he was deprived of a fair trial by the alleged misconduct of the government fingerprint witness, Greene, in volunteering answers. The portion of

3. The trial court instructed the jury as to reasonable doubt as follows: "A reasonable doubt is what the term implies. It is a doubt based on reason. It does not mean every conceivable kind of doubt. It does not mean a doubt that may be imaginary or fanciful, or one that is perhaps captious or speculative. It means simply an honest doubt that appeals to reason and is founded upon reason. In this case, if, after you have considered the evidence, you have such a doubt in your mind as would cause you or any other reasonable man or woman to pause or hesitate in some act of grave concern in your own lives then you have such a doubt as the law contemplates is a reasonable doubt."

4. It was argued that the same kind of fingerprint could have resulted if a group of unfilled envelopes had been handled. The expert, however, was of the opinion that the envelope had a powdery sub-

stance in it. The weight to be given his opinion was for the jury.

5. The trial judge properly instructed the jury as follows: "The law further provides that when on trial for concealing or facilitating the concealment of heroin, the defendants are shown to have had possession of such heroin, such possession shall be deemed sufficient evidence to authorize the defendants' conviction unless the defendants explain their possession to your satisfaction."

We have held that proof of "possession of any sort" is sufficient in the absence of satisfactory explanation. Pitta v. U. S., 9 Cir., 164 F.2d 601, 602.

6. Mr. Justice Frankfurter speaks of the "dead page" and the "unrevealing words of the cold record." Von Moltke v. Gillies, 332 U.S. 708, at page 729, 68 S.Ct. 316; at page 326, 92 L.Ed. 309.

the record pertaining to this matter follows:

"Q. Now how did you come to that conclusion that the print on the envelope is the print that belonged to John Stoppelli, the defendant?

"A. We have a national book every district supervisor in the country, in the Narcotics Bureau, has a national book published by the Narcotics Bureau, all of the major known—"

"A. In my opinion he grasped it this way (indicating) which would be the natural way for placing something in the envelope with the right hand and, after all, men of experience of that type—."

There is no merit in this complaint. The trial judge fully covered the matter by immediate appropriate instructions. We hold the incident to have had no substantial adverse effect upon the fairness of the trial. It was but a transitory incident not proximately derogating from the intrinsic fairness of the trial. In a similar situation, the Court of Appeals of the Third Circuit ruled as we do. United States v. Curzio, 179 F.2d 380. See also, Marsh v. U. S., 3 Cir., 82 F.2d 703.

■ The venue is attacked for the first time on this appeal in an amendment to the "Statement of the Points on which Appellant intends to rely." It is claimed that the venue was in the Southern District of New York and not the Northern District of California. The venue point is without merit, in view of the provisions of 18 U.S.C.A. § 3237.[7] See Killian v. U. S., 58 App.D.C. 255, 29 F.2d 455.[8]

There is nothing at all about this case indicative of injustice or substantial error.

In fact we believe a just result was achieved. It should not be disturbed.

Affirmed.

DENMAN, Chief Judge (dissenting).

I dissent from the decision of this court on an appeal from a conviction had on circumstantial evidence, here a single isolated fact unsupported by direct testimony, that "It is not for us to say that the evidence was insufficient [to go to the jury] because we, or any of us, believe that inferences inconsistent with guilt may be drawn from it."

The exact reverse has been held in our recent case of Karn v. United States, 9 Cir., 158 F.2d 568, 570, and in the following cases from the indicated circuits: Kassin v. United States, 5 Cir., 87 F.2d 183, 184; Union Pac. Coal Co. v. United States, 8 Cir., 173 F. 737, 740; Nosowitz v. United States, 2 Cir., 282 F. 575; Graceffo v. United States, 3 Cir., 46 F.2d 852, 853; Leslie v. United States, 10 Cir., 43 F.2d 288; all cases later considered.

These cases establish that it is our duty in this criminal appeal to determine whether a single circumstantial fact upon which the conviction was had warrants the inference of innocence as much as it warrants one of guilt. If the single fact warrants two such conflicting inferences, the appellate court must set aside the judgment of conviction.

The issue here is whether Stoppelli ever was in possession of the narcotics, for such possession, if unexplained by him, warrants the inference that he participated in their attempted sale and the concealment charged in the indictment. 21 U.S.C.A. § 174; 26 U.S.C.A. § 2553. There is not the slightest

7. Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. A. § 3237.

8. Furthermore, any objection to venue was waived by "going to trial on the merits

without raising any question of venue." Rodd v. United States, 9 Cir., 1949, 165 F.2d 54, 56; United States v. Bushwick Mills, 2 Cir., 1947, 165 F.2d 198; United States v. Jones, 2 Cir., 1947, 162 F.2d 72; Mahaffey v. Hudspeth, 10 Cir., 1942, 128 F.2d 940, certiorari denied, 1942, 317 U.S. 666, 63 S.Ct. 76, 87 L.Ed. 535; Hagner v. United States, 1931, 60 App. D.C. 335, 54 F.2d 446, affirmed on other grounds, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861.

evidence from which the jury could infer that Stoppelli had any connection with any co-defendant or with the sale or concealment other than the single fingerprint hereafter discussed.

Stoppelli was convicted on the testimony of a government expert, so willing that he had to be warned by the court, on the "concavity" shown by a single fingerprint of the ring finger of the left hand on one side of an envelope. The expert testified that no fingerprint of Stoppelli appeared on the other side of the envelope.

The expert's testimony is that the envelope is of "a sort of soft textured paper." The print, he said, was produced by pressure on the envelope and some soft substance inside, making a greater concavity and hence further around the finger than if the envelope contained an unyielding substance. He thought the envelope contained a powdery substance when the print was made. He nowhere states that the concavity could not be otherwise caused.

It is obvious that another inference equally well could be drawn from the concavity disclosed by the print if it contained no powdery substance. If the finger were pressed on the soft texture of the envelope, *when empty,* against the soft tissue of the shank of the thumb, there would be the same concavity and the same impression of the greater portion of the finger.

It is an equally likely inference from the concavity, the sole reason of the expert, that if the soft envelope, when empty, was in Stoppelli's hand as one of a bunch of several soft envelopes, the finger pressure would find the same concavity in the soft yielding bunch and would leave the same single print on the one of the outside envelopes against which the finger pressed. The required recognition of this inference is heightened in view of the expert's testimony that there was no finger print of Stoppelli's on the other side of the envelope.

Neither of these obvious physical facts requires "flights of imagination." They are matters of plain common sense, nowhere contradicted by the government's willing witness.

It is a rare criminal case where the conviction rests upon a single fact concerning which the rational mind must discern that the fact yields an inference of innocence of at least equal weight with the inference of guilt. As was said by this court, in banc, in McCoy v. United States, 9 Cir., 169 F.2d 776, 786, a case of many circumstantial facts, "A single circumstance, standing alone, within the realm of the possible, can usually be accounted for upon an innocent basis." It is abhorrent to the Anglo Saxon sense of justice that in such a situation the government's burden of proof beyond a reasonable doubt is established or the presumption of innocence is overcome.

In the recent case of Karn v. United States, 9 Cir., 158 F.2d 568, 570, in reversing a judgment of conviction, this court construed the evidence and held as follows:

"Viewing the evidence most favorably to the government, we gather from the record the following facts:

"The prosecution relied entirely upon circumstantial evidence for a conviction. It is sufficient to say that under such circumstances the evidence must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. The evidence should be required to point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis but that of guilt. * * * Our considered judgment is that the evidence in this case falls far short of meeting this exacting standard."

Still later, in McCoy v. United States, supra, 169 F.2d, at page 786, the court discusses Ferris v. United States, 9 Cir., 40 F.2d 837, and the Karn case. It says of the Karn case,

"In the Ferris case the appellate court found that the evidence did not permit of any reasonable hypothesis that would permit of an acquittal, and in the Karn case exactly the opposite was found from a consideration of the evidence. Thus, it is seen that neither of these cases are in conflict with what we have said."

In the Ferris case we stated 40 F.2d at page 840,

"Where, as in this case, circumstantial evidence is relied upon to support a verdict of guilty, all the circumstances so relied upon must be consistent with each other, consistent with the hypothesis of guilt, and inconsistent with every reasonable hypothesis of innocence. * * *"

In that case we affirmed because the extended evidence, both direct and circumstantial, presents "a case consistent with guilt, and wholly inconsistent with any reasonable hypothesis of innocence."

In the Fifth Circuit, Judge Hutcheson's opinion, in reversing in Kassin v. United States, 87 F.2d 183, 184, states the rule to be,

"Circumstantial evidence can indeed forge a chain of guilt and draw it so tightly around an accused as almost to compel the inference of guilt as matter of law. Again, circumstantial evidence may forge the chain and draw it tight by legally justifiable, rather than absolutely compelling, inferences. In each case, however, where the evidence is purely circumstantial, the links in the chain must be clearly proven, and taken together must point not to the possibility or probability, but to the moral certainty of guilt. That is, the inferences which may reasonably be drawn from them as a whole must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. * * *"

In this, it follows the same holding in reversing in DeLuca v. United States, 5 Cir., 298 F. 412, 416.

In the Eighth Circuit, Judge Sanborn's opinion in Union Pac. Coal Company v. United States, 8 Cir., 173 F. 737, 740, followed in Grantello v. United States, 8 Cir., 3 F.2d 117, 118, in reversing, stated the rule as follows:

"There was a legal presumption that each of the defendants was innocent until he was proved to be guilty beyond a reasonable doubt. The burden was upon the government to make this proof, and evidence of facts that are as consistent with innocence as with guilt is insufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction. * * *"

That circuit reiterates the rule in reversing in Gargotta v. United States, 8 Cir., 77 F.2d 977, 981.

In the Second Circuit the rule is stated, in reversing in Nosowitz v. United States, 2 Cir., 282 F. 575, in the same language as in Sanborn's opinion in the Union Pacific Coal case, supra.

In the Third Circuit, in reversing in Graceffo v. United States, 46 F.2d 852, 853, the court stated the rule to be "where all the evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment against the accused."

In the Tenth Circuit, in reversing, the court in Leslie v. United States, 43 F.2d 288, 289, quotes with approval the following from Grantello v. United States, supra:

"Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with the innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction."

The case of Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229 is clearly distinguishable. There the court thought there was direct evidence of Curley's own statements showing his participancy in the fraud charged in the indictment, from which the jury could infer that the preponderance of the evidence showed his guilt beyond a reasonable doubt. The case was not, as here, based upon a single piece of circumstantial evidence from which the inference of innocence as well may be drawn as that of guilt.

So, also, with the case of United States v. Perillo and Venetucci, in which Venetucci appealed, 2 Cir., 164 F.2d 645, 646. That was a narcotics case where, as here, Venetucci's fingerprint was on the bag containing the narcotics, but there was other evidence of Venetucci's guilt. Of this, the court says,

"Appellant's fingerprint being on the bag was not the only fact tending to show his guilt. The evidence of the informer shows that the appellant had some conversation with Perillo while the latter was making the arrangements which resulted in the sale and delivery of the narcotics. * * * Such proof was enough to make what Perillo said to the informer at the time the sale was being negotiated admissible, on familiar principles, against the appellant on the conspiracy count. * * *"

Certainly here was no overruling of that court's decision in Nosowitz v. United States, supra.

The Supreme Court cases of Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 and Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 35, 64 S. Ct. 409, 88 L.Ed. 520, are civil cases in which the jury may reach a verdict on the preponderance of the evidence. There is no discussion in these civil cases of reversals in such criminal appeals as have been decided in this court and in the several circuits above described. It is inconceivable that after its review of civil cases the Supreme Court could be establishing the function of the jury in criminal cases without mention of one of the decisions of these six circuits.

In the above discussion, most of the circuits are considering circumstantial evidence, but it is undoubtedly as true of direct evidence that where the inferences to be drawn from a single fact proven are as strong for innocence as they are for guilt, the judgment of conviction must be reversed.

The judgment should be reversed.