**UNITED STATES v. BISHOP (two cases).**
Cr. Nos. 17035, 17038.

District Court, D. Oregon.

Jan. 9, 1948.

Henry L. Hess, U. S. Atty., and Edward B. Twining, Asst. U. S. Atty., both of Portland, Or., for the United States.

William M. Langley, of Portland, Or., for defendant.

JAMES ALGER FEE, District Judge.

Upon the 11th day of September, 1947, a United States Commissioner appointed by the Court issued warrants for Joe Berry Bishop, Henry Clay Tollett, Sam Scribner and Henry Clay Green, charging each with participation in robbery of a bank covered by federal deposit insurance.

It is reported that Henry Clay Tollett and Sam Scribner were each arrested in California, where they still are. Joe Berry Bishop was apprehended in Oklahoma and promptly removed to Oregon. It is claimed that Henry Clay Green was picked up by the officers outside of Oregon, and has thereafter been held in Oklahoma. No attempt has been made to remove him to Oregon.

On the 22nd day of September, 1947, based upon the motion and representations of the prosecuting officers of this District, this Court issued an order for the arrest of Frona Lee Green (alias Frona Lee Rhodes) as a material witness. It is said that this witness was found in Oklahoma, where she is detained in jail pursuant to the order. No attempt has been made to bring her into this District in consequence of the order.

Tollett and Scribner were indicted October 30, 1947, by the Grand Jury of this Court for robbery of a bank at Oakland, Oregon, and Tollett and Green for robbery of a bank at Sweet Home, Oregon. At the same time Bishop was indicted separately for receiving property stolen from the banks at Oakland and Sweet Home, respectively. The United States has evinced an intention to dispose of all of these defendants except Bishop in other jurisdictions and courts.

The strands of the charges concerning two robberies, the disposition of stolen property and the participation of four defendants and the witness seem plaited together in parti-colored unity, notwithstanding the attempt by the mechanical device of separate indictments to divide what is indivisible.

The locale of all of the crimes charged is the State and District of Oregon. Here the dictates of common sense and consideration of public policy demand that the participation of each is to be traced out and justice done to each proven guilty. Here are the investigating and prosecuting officers, who have collected the evidence. Here are the witnesses, who have knowledge of the transaction. Here is a Court responsible to the community where the acts occurred. We need not, in order to establish the appropriate venue, appeal to that feeling for disposal of criminal cases in the vicinage which predates the Norman Conquest.

But it is said that the government will dispose of these matters without trial of the major cases by permitting the state authorities to deal with Tollett and Scribner in California, by permitting Green to be sentenced in Oklahoma, by permitting the witness held in Oklahoma to be released, and by bringing Bishop only before this Court for sentence on two indictments for comparatively minor participation.

On January 9, 1948, at his own request, Bishop was arraigned and pleaded guilty to the charges contained in the two indictments against him. His attorney requested sentence be postponed until after trial of the other defendants. This request is the more reasonable since all of the defendants and all of the charges are apparently intertwined. Bishop is in reality, although not technically, charged as accessory after the fact in each transaction. However, he is here where the crime was charged to have been committed, where investigating and prosecuting officers and witnesses know the facts and where the Court is responsible to the community where the acts occurred.

It would seem that a consistent discrimination against Bishop has resulted. He was immediately removed from Oklahoma to Oregon, while no effort was made to re-

move Green from Oklahoma and no effort was made to remove Tollett or Scribner from California. Besides the witness has not been brought from Oklahoma. It is said that, while Tollett and Scribner have been held in federal custody on warrant issued by authority of this Court, the government has permitted them to be tried in the state courts of California, and each has been convicted and received a heavy sentence. It is also said that Green is adverse to removal, and has requested that the papers in this case be transferred to Oklahoma under Rule 20, Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, so that he may be sentenced there. He is said to be anxious to plead guilty to the robbery at Sweet Home, but in Oklahoma, not in Oregon.

■ But Bishop is in this District and must be sentenced here. In fairness to him, the participation of all of these people in these transactions must be made plain. It is a cardinal principle of criminal justice that all participants of one crime or series of related criminal actions should be sentenced if possible by the same Judge. Sentencing is not an exact science and therefore the balancing of all in one transaction should at least be on the same scale. This certainly applies to Bishop and Green, who were both held in Oklahoma, and each of whom wishes to plead guilty. The accessory should not on grounds of public policy be sentenced by a different Judge than the principal.[1]

But it is said that Green may change his mind and desire trial. Likewise Tollett and Scribner, if removed here, may stand trial. If so and the three are acquitted, then the fortunes of Bishop are still affected because, if they cannot be convicted of stealing the money, this factor should be considered in sentencing Bishop, who is charged with receiving stolen money. The commonwealth affected by the acts which were done should see the balancing of justice between the various participants, whoever they are.

■ If on the other hand the government is not serious about obtaining convictions of the three other defendants in this District, then the Court should set the plea of guilty of Bishop aside and advise whether the case against him should be dismissed or be sent to trial.[2] In a prosecution of Bishop, the United States would be required to prove the robbery of the particular bank and Bishop's knowledge thereof in order to convict him of receiving property stolen therefrom.

■ An alternative suggestion is that the United States cannot bring back the three defendants in other states because they will fight removal. As far as Tollett and Scribner are concerned, the indictment will furnish conclusive proof of probable cause. The only remaining defenses to removal are failure to prove identity, or that defendant had not been in Oregon. United States v. Chiarito, D. C., 69 F.Supp. 317. But, if the government cannot prove these facts, there is no sufficient proof against Bishop, and he likewise should be freed. As to Green, he has already agreed to plead guilty according to report, and therefore can hardly urge that he is not the same person who was in Oregon.

■ Here the right of Bishop to have all participants in a transaction face the same Judge is inextricably interwoven with the right of the people of Oregon, who were offended, to have justice done to all in their own court. Article III, Section 2, of the Constitution, protects this right of the individual state by setting up federal trial courts as an integral part of the judicial structure of each, and requires in the public interest that the trial of all crimes take place in the state in which they were committed.

When the provisions of the Bill of Rights were adopted and amendments thereto, there was conferred upon each defendant a personal right to be indicted, tried and sentenced in the state where the crime was alleged to have been committed. As an additional safeguard, there was created as a right of a defendant the necessity for a trial court in a federal judicial district, whose boundaries might be coextensive with but could not exceed those of the state

---

[1] At one time an accessory after the fact could not be tried until the principal had been tried. Blackstone Comm. IV 323, Cooley's 4th Ed. p. 1471.

[2] This Court has often set aside a plea of guilty in the interest of justice.

within which it was erected. Here and here alone had this court power to indict, try and sentence a defendant. The judicial structure was so tied into the personal right of a defendant by these interlocking provisions that one could not be waived without destroying the other.

The sound public policy laid down as to multiple defendants indicted for one apparently continuous transaction can be carried out by directing the United States Attorney not to countenance or allow his name to be used in connection with an application for transfer under Rule 20. But the office of the Attorney General is reported to be adamant in insistence that the transfer be carried out.

Solemnly, perhaps even mournfully, we must contemplate the present attempted frustration of the purpose of the Constitution to place power of indictment and trial in federal courts local to the state of occurrence and of the purpose of the Sixth Amendment to prevent transportation of defendants to a foreign jurisdiction for indictment, trial and sentence. It may be feared the attempt to distort Rule 40(b)(3), Federal Rules of Criminal Procedure, to sanction removal of a person to a state where he had never been, had the same motivation. If this attempt succeeds, then the government can try any defendant in any district,[3] even though the acts may have been committed across a continent, for it will be claimed that the defendant who has not demanded trial in the state and district designated by the Constitution has not only waived his right, but the right of the people to have the trial in the vicinage.

This procedure adopted by courts and given practical application by the Attorney General destroys for all defendants basic constitutional rights.[4] Even less important rights formerly could not be waived.[5]

"It was the fear of courts, as well as the fear of prosecutors, police, and legislatures, which led to the inclusion in our Bill of Rights of numerous procedural safeguards for criminal trials. They were, as Madison stated, safeguards interposed between the people and 'the magistrate who exercises the sovereign powers'. They were embedded in our charter of government to place them beyond legislative reach.

"History has shown that without procedural safeguards neither judges nor juries can be trusted to mete out justice, that injustices flourish where procedural requirements are relaxed. Procedure is more than formality. Procedure is, indeed, the great mainstay of substantive rights."[6]

This interpretation insisted upon by the Attorney General will pose for the courts the much more difficult problem as to whether a particular defendant under peculiar circumstances had waived. Haley v. State of Ohio, 68 S.Ct. 302. Why open a much more complex problem when the

---

[3] Compare Hagner v. United States, 60 App.D.C. 335, 54 F.2d 446, affirmed on other grounds, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861.

In re Buell, Fed.Cas.No.2,102, 3 Dill. 116; In the Matter of Charles A. Dana, Fed.Cas.No.3,554, 7 Ben. 1; In re Dana, D.C., 68 F. 886; New York Central & H. R. R. Co. v. United States, 2 Cir., 166 F. 267; United States v. Smith, D.C., 173 F. 227; United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897; Rumely v. McCarthy, 250 U.S. 283, 39 S. Ct. 483, 63 L.Ed. 983.

Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas. 1914A, 614; United States v. McWilliams, D.C., 54 F.Supp. 791; Noble v. Eicher, 79 U.S.App.D.C. 217, 143 F.2d 1001; Noble v. Botkin, 80 U.S.App.D.C. 354, 153 F.2d 228; United States v. McWilliams, D.C., 69 F.Supp. 812.

[4] Callan v. Wilson, 127 U.S. 540, 8 S. Ct. 1301, 32 L.Ed. 223.

[5] See Thompson v. Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061; Dickinson v. United States, 1 Cir., 159 F. 801; Freeman v. United States, 2 Cir., 227 F. 732. Trial by jury in civil cases given by the Constitution is circumscribed by Rules.

"The right of jury trial should not be expanded. This method of settling disputes is expensive and dilatory—perhaps anachronistic." 45 Yale L.J. 1026. This objective is accomplished civilly without consent by inadvertent forfeiture through failure to act.

[6] Mr. Justice Douglas speaking before the Rhode Island Bar Association, as quoted in Oregon State Bar Bulletin (December, 1947) page 7.

Constitution says that no waiver is possible? In re Schwindt, D.C., 74 F.Supp. 618. Or are we sincere in saying that the Bill of Rights confers inalienable rights?

No case has been cited nor has our research disclosed any, since the promulgation of the federal government, where a defendant has been tried or sentenced in one district court upon an indictment returned in another, before the adoption of Rule 20. Yet, if the thesis of the proponents of the rule be true, such trial or sentence could have taken place in any federal district in the country at any time in our history, since the matter was dependent upon the waiver of a personal privilege. No rule was or is necessary if the proposition is correct. The drafters cite and can cite no precedent. We must conclude the jurisdiction of the Court, as well as the personal right of defendant, is involved.

■ However, were the rule to be held valid, it certainly does not apply to a case where an indictment joins multiple defendants. Rule 20 provides that a defendant held in a district other than where the indictment was returned may offer to plead guilty, and if the United States Attorneys of the two districts concur, the papers shall be forwarded by the Clerk of the indicting district to the Clerk of the district where the defendant is held "and the prosecution shall continue in that district." Obviously the intention is that the whole case shall be transferred. The rule fits a case where there is only one defendant. But where there are several defendants, under the language of the rule itself, the prosecution cannot continue in any district except that where the indictment was returned.

■ In any event, the papers cannot be transmitted to Oklahoma unless the United States Attorney join in and sign a proper request by the defendant Green. But the situation and fairness to Bishop compels the production of Green in this district. If the Attorney General were upon the ground and knew conditions, orders would be issued to bring Green into the district to answer for the crime of which he is accused, instead of bringing compulsion upon the local officials to permit him to plead guilty in a distant jurisdiction.

Whether Rule 20 is valid or no, under this situation the direction to assist Green in "remaining" away from this district, when he should come here to face the charges and be tried with Tollett, is an unwarranted interference with the judicial function and a defeat of the process of this Court. Green committed a crime if he fled Oregon with intent to avoid prosecution or to avoid giving testimony. 18 U.S.C.A. § 408e. Why should he be favored by the officers of the government under such circumstances? A premium would thus be placed on escape. The situation would then lend itself to a promise of a favorable recommendation for him to a Judge unacquainted with the atmosphere in Oregon, if he should plead guilty. But this in itself is a distinction against Bishop. There should be no administrative discrimination between defendants.

The breakdown of enforcement of criminal law, so notable in metropolitan centers, arises from administrative and political frustration of the process of law. The hardened criminal who puts up a show of resistance often is able to obtain an inadequate sentence. An innocent man may often plead guilty, oppressed by show of force and fear of consequences.

The federal system had been notably free from such travesty in the past, because it has been under control of an independent judiciary.

■ The crimes of robbing the banks at Oakland and Sweet Home were committed in Oregon. The prosecution should take place here. If any be guilty thereof, the public of this community should know the consequences instead of hearing rumors of what sentences were imposed in far distant places.

It is directed that the case of United States v. Tollett and Scribner be set for January 27, 1948, and that bench warrant issue to bring defendants before this Court forthwith. The case of United States v. Tollett and Green, D.C., 76 F.Supp. 871, is set upon the same day for trial.